IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

CAROL DUDEK,

     PLAINTIFF                        04 Civ 10178 (VM)(DF)
                                     PLAINTIFF'S THIRD AMENDED
     vs                          COMPLAINT [JURY TRIAL]

THE CITY OF NEW YORK, a municipal
entity, NEW YORK CITY POLICE SERGEANT FACKLER,
individually and in his official capacity, NEW
YORK CITY POLICE OFFICER QUIMBY,individually
and in her official capacity, NEW YORK CITY
POLICE OFFICERS "JOHN DOES" and "SALLY ROWES",
individually and in their official capacities,
JOSEPH ESPOSITO, individually and in his official
capacity as Chief of the New York City Police
Department, RAYMOND KELLY, individually and in his
official capacity as New York City Police
Commissioner, JOHN J. COLGAN, individually and in
his official capacity as Deputy Chief and Commanding
Officer at the Pier # 57 Detention Facility, THOMAS
GRAHAM, individually and in his official capacity as
Commanding Officer of the New York City Police
Department Disorders Control Unit, BRUCE SMOLKA,
individually and in his official capacity as an
Assistant Chief in the New York City Police Department
and in Patrol Borough Manhattan South,TERRENCE
MONAHAN, individually and in his official
capacity as an Assistant Chief in the New York
City Police Department, JAMES ESSIG, individually
and in his official capacity as a Deputy
Inspector in the New York City Police Department,
GERALD  DIECKMANN, individually and in his
official capacity as a Deputy Inspector in the
New York City Police Department, "JOE" FRANZO,
individually and in his official capacity as
a Lieutenant in the New York City Police
Department, "JOE" TRACEY, individually and
in his official capacity as a Captain in the
New York City Police Department, N. PEREZ,
Shield # 5749, individually and in his capacity
as a New York City Police Officer,

     DEFENDANTS

_____


I.  INTRODUCTION

    1.    This  is  an  action  against  the  Defendant  parties,

individually and collectively, for the violation of the Plaintiff's federally guaranteed constitutional and civil rights and her rights as otherwise guaranteed under the laws and Constitution of the State of New York.

2. This case arises out of the arrest of the Plaintiff, Carol Dudek, on August 31, 2004 in the vicinity of Union Square East and Irving Place in the time frame of 6:00 P.M. to 7:00 P.M. at or thereabouts and the subsequent preferral of charges associated therewith and, related thereto, the Plaintiff's detention and the terms and conditions of her detention and, in addition thereto, the utilization of unnecessary, unreasonable and excessive force in the form of excessive handcuffing; and, as well, the denial of medical treatment and the otherwise punitive and retaliatory conduct and actions against the Plaintiff because of her legitimate, reasonable, and protected speech activities.

3. The Plaintiff seeks monetary damages for her wrongful and unlawful false arrest and for her wrongful and unlawful detention and incarceration and for the wrongful preferral of charges and the wrongful and the utilization of unnecessary and unreasonable and excessive force and, otherwise, for the unreasonable and unlawful manner and fashion and conditions of the Plaintiff's detention and for the malicious abuse of criminal process and for the retaliatory and punitive conduct against the Plaintiff because of her reasonable and legitimate and protected speech activities and for the denial of medical care associated with her detention and imprisonment.

2

## II. JURISDICTION

4.    Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331, 1332, and 1343 [3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution.

5.    The Plaintiff and the Defendants are citizens and residents of different States and the value of the rights in question and the injuries associated with and to the Plaintiff as a consequence of the violation of those rights exceeds one hundred thousand dollars.

6.    Jurisdiction is also invoked pursuant to and under 28 U.S.C. Section 1367, entitled Supplemental Pendent Party Jurisdiction. The Plaintiff requests that the Court exercise its powers to invoke pendent claim and pendent party jurisdiction over and against the Defendant Officers in their individual capacities.

7.    The State law claims have a common nucleus of operative fact with the federally based claims and they arise out of the same transaction and occurrence giving rise to the Plaintiff's federally based claims and causes of action.

8.    The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff, while seeking monetary damages, also seeks declaratory and injunctive relief if such is deemed necessary and desirable

and in the interest of justice.

9.   This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States and the laws and Constitution of the State of New York.

III. PARTIES

10.   The Plaintiff is an American citizen and resident of the City of New York, the County of New York, the State of New York.

11.   The Defendant City of New York is a municipal entity existing pursuant to and under the laws and Constitution of the State of New York.

12.   Defendants Fackler, Quimby, N. Perez, Franzo, Tracey, "John Does" and "Jane Roes" are New York City Police Officers/Command Officers. Joseph Esposito is the Chief of the New York City Police Department.  Raymond Kelly is the New York City Police Commissioner.  Thomas Graham, Bruce Smolka, John Colgan, and Terrence Monahan and James Essig and Gerald Dieckmann are all high ranking New York City Police Department command officers who, along with Defendants Kelly and Espositio, were responsible for the planning and oversight and implementation of the Republican National Convention policing operations including the arrest and detention operations that were carried out and to which the Plaintiff was subjected. All of the Defendants are sued in their individual and official capacities. Notwithstanding the wrongful and illegal nature of their acts and conduct as hereinafter

4

described, they were taken in and during the course of their duties and functions as employees and agents of the City of New York and incidental to the otherwise lawful performance of the same.

IV.  ALLEGATIONS

13.   The Plaintiff is Carol Dudek.

14.   The Plaintiff resides at 417 East 9th Street, New York, New York.

15.   The Plaintiff is fifty eight [58] years of age. The Claimant's birth date is September 14, 1946.

16.   The Plaintiff attended Parsons School of Design from 1992-1994.

17.   The Plaintiff has been employed as a legal worker/assistant/para-legal for approximately thirty four years. In addition, the Plaintiff has done free-lance work as an interior decorator.

18.   The incident which gives rise to this litigation commenced on August 31, 2004 as a result of the Plaintiff's arrest in the vicinity of 16th Street and Union Square East and Irving Place between approximately 6:00 P.M. and 7:00 P.M.

19.   Prior to the convening of the Republican National Convention in New York City, the Plaintiff received training as a legal observer for the demonstrations which were anticipated would be taking place at the Republican National Convention in New York City.

20.    Moreover, on Thursday, August 26, 2004, the Plaintiff participated as a legal observer at a demonstration which took place at Columbus Circle and which greeted peace marchers who had arrived in the City from Boston as a prelude t the Republican National Convention. Furthermore on August 27, 2004, the Friday night prior to the convening of the Republican National Convention on Monday, August 30, 2004, the Plaintiff actually participated as a legal observer at a "critical mass bicycle ride" and demonstration on Second Avenue between 9th and 10th Streets from 9:30 P.M. to 1:30 A.M. Furthermore, the Plaintiff participated as a legal observer on August 28, 2004, the Saturday night prior to the convening of the Republican National Convention, at a WTC [World Trade Center] candlelight vigil. Finally, on August 29, 2004, the Sunday prior to the convening of the Republican National Convention on August 30, 2004, the Plaintiff was a legal observer at a day-long pre-convention march/demonstration in New York City.

21.    In other words, the Plaintiff was, by Tuesday, August 31, 2004 a well practiced Republican National Convention First Amendment protected speech activity legal observer.

22.    On Tuesday, August 31, 2004, the Plaintiff was a legal observer at a series of demonstrations [First Amendment protected speech activities] which took place throughout Manhattan and which were associated Republican National Convention meetings then taking place in New York City.

23.    In the evening of Tuesday, August 31, 2004, there was a

First Amendment protected speech activity which was taking place in the vicinity of Union Square Park and at which the Plaintiff was present as a legal observer.

24. The Plaintiff had been at the afore-described location for perhaps one hour observing the activity.

25. The Plaintiff, along with others who were then present, was observing a police arrest action being directed at and taken against some individuals when the Plaintiff and others were directed by New York City Police Officers to move from the location where they were then situated.

26. The Plaintiff complied with the police order and moved to the sidewalk along with many others [perhaps thirty to fifty individuals] who were then observing the police action.

27. Additional police arrived at the area in the vicinity of Irving Place and Union Square East where the Plaintiff was then standing on the sidewalk along with others [as described].

28. The Plaintiff and the other individuals, then on the sidewalk, complied with the police order to move and began walking west toward Union Square.

29. While walking west on the sidewalk toward Union Square in compliance with the previously given police order, the Plaintiff observed a police line in front of her and the others with whom she was walking.

30. The Plaintiff went to the front of the group then walking toward Union Square and the Plaintiff observed that people had

been netted in by a police action.

31.    Because the Plaintiff was a legal observer and was identified as such by her green hat that described her as a legal observer, persons in the group, who had been netted, looked to the Plaintiff, as a legal observer, for some advice as to how to address this unforeseen netting police action of the persons who had just been walking and who were doing nothing other than complying with a previously given police order to move from where they had previously been situated on a sidewalk.

32.    The Plaintiff looked for a route that she and the others could take in order to get out of the netting area and to otherwise continue to comply with the previously given police order to move [as the Plaintiff and others were doing in an otherwise lawful and reasonable manner and fashion].

33.    The Plaintiff proceeded to go to a uniformed patrol officer in the area and requested that she be able to speak with a supervisor about what was transpiring.    The uniformed patrol officer indicated that he was to busy at which time the Plaintiff observed a command officer and approached him.

34.    The Plaintiff, clearly identified as a legal observer, asked the command officer whether she could speak with him about what was then on going and to discuss with him how best to address the situation so that individuals, who were being netted and who were otherwise endeavoring to comply with a previously given command to move, could get out of the net and continue to comply

with the previously given order. In addition and in that context, the Plaintiff asked the command officer whether people were being arrested.

35.    The command officer informed the Plaintiff that he was not making the decision and that the decisions had come from "higher up" and that it appeared to him that the group of individuals was peaceful group and that everything would be alright. The higher ups in charge of the location at and when the Plaintiff was arrested were, it is believed, James Essig and Gerald Dieckmann, each of whom, it is believed, was an "incident commander" and each of whom was responsible for the oversight and supervision of the policing actions at the time and place of the arrest of the Plaintiff and others.

36.    The Plaintiff went back to the group of persons, who were then in the netting, and informed them what the command officer had just indicated to her.

37.    Persons, within the netting, not having any other place to go, then sat down.

38.    The Plaintiff remained standing.

39.    Individuals, within the netting, were heard by the Plaintiff to be saying that they were simply bystanders to what had been occurring and that they had been shopping and/or were tourists from Germany and France [such is what the Plaintiff heard as she was standing in the vicinity of those within the netting].

40.    The Plaintiff then observed a young person being picked

up and handcuffed by the police. The Plaintiff observed others being handcuffed by the police.

41.    The Plaintiff approached a female police officer and asked if she could, as a legal observer, obtain the names of those individuals who were being placed under arrest.

42.    A line of police officers separated those being arrested from those who were otherwise present.

43.    The female police officer informed the Plaintiff that such was fine: "go ahead".

44.    The Plaintiff began to get the names of persons who were being arrested and handcuffed [as was a legitimate function of a legal observer]. She did so professionally and in a non provocative manner and fashion and in a reasonable, non intrusive manner and fashion.

45.    As the Plaintiff was securing the names of individuals then under arrest, the Plaintiff was speaking into her cell telephone transmitting those names to an individual in an office which the Plaintiff had known/had been instructed was a location where names of individuals, who were being arrested, could be transmitted.

46.    As the Plaintiff was obtaining names of those who were being arrested and had been taken into custody and was transmitting such via her cell telephone, the Plaintiff heard someone shout: "Right there, right there. Get her."

47.    The Plaintiff looked up and observed a Sergeant Fackler

[?], Badge # 3782 or 3682, ordering the Claimant's arrest.

48.   The Plaintiff felt her arms being pulled behind her.

49.   The Plaintiff asked why she was being arrested; that she was, as was previously obvious because of her green hat and because of her involvement with police officers [as described], a legal observer; and that she had a right to be present and to engage in the otherwise reasonable, legal activity in which she was then engaged [as described].

50.   The Sergeant replied that the Plaintiff was the reason for "all this mess".  He stated: "I see you walking around here with your green hat acting like you're the police."

51.   The Plaintiff endeavored to explain that she was only doing that which she had a right to do and which an officer had indicated she could do.  The Sergeant responded: "If you don't shut up, I'll keep you in jail for a week instead of a day."

52.   The Plaintiff was handcuffed, taken into custody and, eventually, transported to a facility on a pier in the Manhattan waterfront for processing, imprisonment and detention [known as "Pier 57"].

53.   When the Plaintiff arrived at the pier area, she was required to stand in a long line before being placed in holding pens. The Plaintiff believes that she was in line for up-wards of two hours, all the while rear handcuffed.

54.   The handcuffs were cutting into the Plaintiff's wrists and otherwise very painful. The rear cuffing caused undue stress

on the Plaintiff's body.

55.    The welts associated with the Plaintiff's unreasonable, unnecessary, and excessive handcuffing lasted on her wrists for several days as did pain in her shoulders that was associated with the stress of the excessive, unreasonable, and unnecessary rear handcuffing after the Plaintiff was arrested, handcuffed, and taken into custody.

56.    The Plaintiff repeatedly asked and pled for assistance and relief from the handcuffing but her requests and pleas were ignored.

57.    The Plaintiff was assigned an arresting officer.  The Officer's name was, it is believed, Quimby.

58.    The Plaintiff's property was searched twice. Among her property was prescription medication which was seized and not given back to the Plaintiff. The Plaintiff's cash and metro card were returned to the Plaintiff.

59.    The Plaintiff was placed in a holding cell with approximately one hundred other individuals.

60.    The floor of the holding cell was covered and caked with oil and chemicals. The conditions placed the Plaintiff at risk to her health, welfare, and well being and the City of New York knew or should have known that those conditions [as described] placed the Plaintiff at increased jeopardy to her health and well being.

61.    Because of the cell size and the number of individuals therein and because of the physical conditions in the cell [as

described], it was virtually impossible to get any rest.

62.  The Plaintiff was not given access to her medication and was not otherwise provided any medical care or services.

63.  The toilet facility was a porta-pot type of toilet outside of the cell making it difficult if not impossible and otherwise unreasonable to utilize.

64.  The opportunity for food and water was minimal if available at all [a cup with a large container of water was made available along with two slices of white bread with what purported to be one slice of bologna].

65.  Ultimately, the conditions of the Plaintiff's confinement, individually and collectively, were unreasonable, unnecessary, and excessive terms and conditions of her seizure which placed the Plaintiff at risk.

66.  The Plaintiff and others were eventually transported to Centre Street in a bus. There were no seat belts in the course of the transportation and the Plaintiff was rear cuffed.

67.  The Plaintiff arrived at the Centre Street facility some time late on the morning of September 1, 2004 after having been held at the pier area for approximately fifteen [15] hours.

68.  The Plaintiff was packed into holding cells at the Manhattan Central Booking facility making it difficult to breathe and to otherwise obtain any kind of minimal, humane comfort.

69.  During the Plaintiff's imprisonment and detention at the Manhattan Central Booking facility, the Plaintiff, who had been

denied her medication although she sought to obtain such and to receive medical treatment without success, began to have withdrawal symptoms associated with the condition for which she takes prescribed medication.

70.   The Plaintiff informed her custodians that she needed her medication but her pleas for such were ignored by her custodians.

71.   At or about 10:00 P.M. on September 1, 2004, the Plaintiff was suffering severe withdrawal due to her inability to obtain her prescribed medication.   The Plaintiff was suffering from a severe headache, nausea, blurry visions, palpitations, and extreme anxiety and agitation. The Plaintiff was crying.

72.   The  Plaintiff finally was able to get the attention of a female Captain who sent the Plaintiff to the medical services in the Central Booking facility   The Plaintiff was not given the medication, which had been prescribed for her, since the medication was not available.

73.   At or about 2:00 A.M. on September 2, 2003 the Plaintiff was rear handcuffed and transported to Bellevue Hospital.

74.   The Plaintiff was continuing to suffer episodes of dizziness, vomiting, blurry vision and a severe headache.

75.   The Plaintiff was rear handcuffed in a wheelchair.

76.   The Plaintiff asked to be front cuffed but her request was denied.

77.   The handcuffing aggravated the Plaintiff's already painful wrists and shoulders and intensified the symptoms which

14

the Plaintiff was suffering [as described].

78.    The Officers, who transported the Plaintiff to Bellevue Hospital, were complaining about the fact that they had to accompany the Plaintiff to Bellevue.

79.    The Plaintiff informed the officers that she would have her husband bring her medication to her; but her request to do so was ignored.

80.    The Plaintiff received treatment at Bellevue Hospital and was given one half of dose of her prescribed medication.

81.    Eventually, the Plaintiff was returned from Bellevue to Central Booking and was, then, eventually taken to Court where she was arraigned. The Plaintiff was arraigned on September 2, 2004 at or about 9:00 to 10:00 P.M. or thereabouts.  The Plaintiff was in post arrest custody, until her arraignment, for somewhere in the proximity of forty eight to fifty hours. Once the Plaintiff was returned to Central Booking from Bellevue Hospital, she received little, if any, nourishment [food and water]; and, at times, she was asked by her custodians "where the terrorist was".

82.    Ultimately, the charges preferred against the Plaintiff were adjourned in contemplation of dismissal.

83.    There was no probable cause or other reasonable basis for the Plaintiff's arrest, detention, and imprisonment at the time of her arraignment.

84.    The Plaintiff was falsely arrested, detained, and imprisoned in retaliation for the legitimate exercise of her First

Amendment protected speech activities.

85.    The Plaintiff was arrested and imprisoned for the collateral objective of punishing and retaliating against her for the exercise of her First Amendment protected speech activity.

86.    The Plaintiff was subjected, by the nature and extent of her handcuffing, to excessive, unreasonable, and unnecessary force.

87.    The Plaintiff was subjected, by the withholding of her medication, to unreasonable, unnecessary, and excessive terms and conditions of her seizure.

88.    The Plaintiff was subjected to reckless and deliberately indifferent medical treatment while she was detained and imprisonment.

89.    The Plaintiff was otherwise subjected to unreasonable, unnecessary, and excessive detention when, having been arrested, she was not released with a Desk Appearance Ticket or Summons, for which she was qualified and qualifiable, but rather detained and put through the system, the latter of which was not only unnecessary, unreasonable, and excessive, but, as well, punitive and designed to retaliate against the Plaintiff for the exercise of her First Amendment protected speech activity.

90.    The Plaintiff was otherwise subjected to unreasonable, unnecessary, excessive terms and conditions of detention and imprisonment and seizure by, among other things, unlawful and unnecessary and unreasonable fingerprinting, failure to provide

holding cells which were not over-crowded and otherwise not environmentally toxic [the holding cells being vastly over-crowded and defined by chemical and toxic conditions that were harmful to the Plaintiff's welfare, health, and well being].

91.   The actions and conduct taken against the Plaintiff were the result of and were propelled by the policies, practices and customs of the City of New York.

92.   In expectation of demonstrations to be conducted by individuals at the Republican National Convention, the Defendant City of New York adopted policies, practices and customs which propelled arrests where there was otherwise no basis for arrest and, then, to excessively and unnecessary and punitively detain the individuals, rather than to release individuals who were qualified and qualifiable for release, after arrest, with Desk Appearance Tickets or Summonses in a timely manner and fashion [thereby, for all intent and purposes unnecessarily imprisoning the individuals], and to subject them to excessive, unnecessary, and unreasonably handcuffing and fingerprinting, and, then, to imprison them in hostile, unreasonable, and unnecessary and health detrimental conditions.

93.   The policies and practices and customs adopted by the City of New York and implemented by its agents and employees during the Republican National Convention, propelled officers to act outside of the bounds of constitutionally prescribed conduct and to push the envelope thereby subjecting the Plaintiff, among

17

others, to false arrest, excessive and unreasonable, and unnecessary force in the form of excessive handcuffing, unnecessary and unlawful and unreasonable fingerprinting and photographing, the denial of adequate medical treatment, excessive detention, and detention and imprisonment in hostile, health detrimental and welfare detrimental conditions.

94. The Defendant City's policies, practices, actions, and conduct propelled thereby were predicated on the "ends justifies the means" philosophy propelling the goal of keeping "order" at all costs even the cost of the knowing violation of an individual's constitutional rights.   The policies, practices, customs and the actions and conduct propelled thereby were deemed a "cost of doing business", that is: in order to maintain order, the cost of violation the constitutional rights of individuals was permitted and authorized and allowed to take place.

95. The Plaintiff was subjected to false arrest, assault and battery, excessive detention, excessive handcuffing, unreasonable fingerprinting and photographing, health risk conditions of detention, and malicious abuse of criminal process, and retaliation for the exercise of her State and federal constitutionally protected speech activity.

96. The actions and conduct taken against the Plaintiff were taken by agents and employees of the City of New York who were acting under color of law and who were otherwise "state actors". While their conduct and actions were wrongful, unconstitutional,

and otherwise unlawful they were taken by the City's agents and employees in the course of their respective duties and functions and incidental to the otherwise lawful performance of the same. They were taken pursuant to and under the authority and responsibility of Defendants Dieckmann and Essig, each of whom, it is believed, was an "incident commander" at the location when and where the Plaintiff was arrested and each of whom it is believed was the commanding officer in charge of the policing operation at the location when and where the Plaintiff and others were arrested.

97.   The actions, conduct, policies, practices, and customs described herein violated the Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

98.   The actions, conduct, policies, practices, and customs violated the Plaintiff's rights under the laws and Constitution of the State of New York including false arrest, malicious abuse of criminal process, assault, battery, excessive detention, excessive handcuffing, unreasonable and unnecessary fingerprinting and photographing, and retaliation for her exercise of her State constitutionally protected speech activity.

99.   The actions, conduct, policies, practices, and customs were negligent and were otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

100.    The Plaintiff suffered physical pain, anxiety, embarrassment, loss of liberty, emotional distress, psychological trauma, mental anguish.

101.    The Plaintiff continues to suffer residual injuries and damages as a consequence of the actions, conduct, policies, practices, and customs as described and the violation of her rights associated therewith.

102.    It is believed that there were New York City Police Officers [both line Officers and command Officers] who were part and parcel of the actions and conduct taken against the Plaintiff during the course of the entire transaction which describes the incident herein and component parts thereof including Command Officers and policy making Officers all or some of whom authorized and sanctioned the conduct practiced and taken against the Plaintiff and which propelled the actions and conduct, in the component parts thereof and their totality, taken against the Plaintiff.

103.    The actions and conduct of the New York City Police Officers as described above were propelled by the policies and practices of the New York City Police Department with respect to the planning and oversight of the Republican National Convention.

104.    In that regard and respect, the City of New York recklessly and with deliberate indifference to the First Amendment rights of people to peaceably assemble and engage in protected speech activity at the Republican National Convention unlawful and

20

unconstitutional actions against innocent law abiding by-standers, who were observing police actions and/or were simply in the vicinity of police action including the arrest of those individuals and how they were treated when arrested and thereafter including the use of unnecessary and unreasonable force and including unnecessary and excessive and unreasonable detention and, associated therewith, unreasonable and unnecessary terms and conditions of confinement [for example unnecessary and unreasonable and excessive handcuffing, unnecessary and unreasonable and unlawful fingerprinting and photographing, denial of access to adequate bathrooms, denial of access to counsel, denial of access to nourishment and medication and subjecting individuals to toxic detention facilities].

105. The policies and practices created a situation where people, who were otherwise doing nothing impermissible, were subjected to arrest and denied their right to freely and lawfully engage in a peaceful assembly and demonstration and to otherwise be on the sidewalk doing nothing other than observing actions being taken by Police Officers toward other individuals and/or just being present.

106. The actions and conduct and policies and practices were otherwise negligent and the proximate cause of the Plaintiff's injuries.

107. The Plaintiff has no other adequate remedy at law but for the institution of this litigation.

FIRST CAUSE OF ACTION

108.  The Plaintiff reiterates Paragraph # 's 1 through 107 and incorporates such by reference herein.

109.  The Plaintiff was falsely arrested and falsely imprisoned in violation of the Plaintiff's rights under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and Fourth and Fourteenth Amendments to the United States Constitution.

110.  The Plaintiff suffered injuries and damages.

SECOND CAUSE OF ACTION

111.  The Plaintiff reiterates Paragraph #'s 1 through 110 and incorporates such by reference herein.

113.  The Plaintiff was, <u>inter alia</u>, falsely arrested and falsely imprisoned in violation of the laws and Constitution of the State of New York.

114.  The Plaintiff suffered injuries and damages.

THIRD CAUSE OF ACTION

114.  The Plaintiff reiterates Paragraph # 's 1 through 113 and incorporates such by reference herein.

115.  The Plaintiff was subjected to unnecessary and unreasonable and excessive force in the form of unnecessary, unreasonable, and excessive handcuffing in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

116.  The Plaintiff suffered injuries and damage.

22

FOURTH CAUSE OF ACTION

117.  The Plaintiff reiterates Paragraph # 's 1 through 116 and incorporates such by reference herein.

118.  The Plaintiff was subjected to assault and battery in the form of unnecessary and excessive and unreasonable handcuffing in violation of her rights under the laws and Constitution of the State of New York.

119.  The Plaintiff suffered injuries and damages.

FIFTH CAUSE OF ACTION

120.  The Plaintiff reiterates Paragraph #'s 1 through 119 and incorporates such by reference herein.

121.  The Plaintiff was subjected to unreasonable, unnecessary, and excessive conditions of her seizure and detention in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

122.  The Plaintiff suffered injuries and damages.

SIXTH CAUSE OF ACTION

123.  The Plaintiff reiterates Paragraph #'s 1 through 122 and incorporates such by reference herein.

124.  The Plaintiff was subjected to unreasonable, unnecessary, and excessive conditions of her seizure and detention in violation of her rights under the laws and Constitution of the State of New York.

125.  The Plaintiff suffered injuries and damages.

SEVENTH CAUSE OF ACTION

126.   The Plaintiff reiterates Paragraph # 's 1 through 125 and incorporates such by reference herein.

127.   The Plaintiff was subjected to excessive, unreasonable, and unnecessary detention in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

128.   The Plaintiff suffered injuries and damages.

EIGHTH CAUSE OF ACTION

129.   The Plaintiff reiterates Paragraph #'s 1 through 128 and incorporates such by reference herein.

130.   The Plaintiff was subjected to excessive, unreasonable, and unnecessary detention in violation of her rights under the laws and Constitution of the State of New York.

131.   The Plaintiff suffered injuries and damages.

NINTH CAUSE OF ACTION

132.   The Plaintiff reiterates Paragraph #'s 1 through 131 and incorporates such by reference herein.

133.   The Plaintiff was denied adequate medical care while in custody in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

134.   The Plaintiff suffered injuries and damages.

TENTH CAUSE OF ACTION

135.   The Plaintiff reiterates Paragraph # 's 1 through 134 and

incorporates such by reference herein.

136.  The Plaintiff was denied adequate medical care while in custody in violation of her rights under the laws and Constitution of the State of New York.

137.  The Plaintiff suffered injuries and damages.

ELEVENTH CAUSE OF ACTION

138.  The Plaintiff reiterates Paragraph # 's 1 through 137 and incorporates such by reference herein.

139.  The Plaintiff was subjected to medical and health impairing facilities and conditions associated therewith in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983

140.  The Plaintiff suffered injuries and damages.

TWELFTH CAUSE OF ACTION

141.  The Plaintiff reiterates Paragraph #'s 1 through 140 and incorporates such by reference herein.

142.  The Plaintiff was subjected to medical and health impairing facilities and conditions associated therewith in violation of her rights under the laws and Constitution of the State of New York.

143.  The Plaintiff suffered injuries and damages.

THIRTEENTH CAUSE OF ACTION

144.  The Plaintiff reiterates Paragraph #'s 1 through 143 and incorporates such by reference herein.

25

145.   The actions and conduct were taken herein for the collateral purpose of punishing the Plaintiff for the exercise of her First Amendment protected speech activities in violation of the Plaintiff's rights under the First Amendment to the United States Constitution.

146.   The Plaintiff suffered injuries and damages.

FOURTEENTH CAUSE OF ACTION

147.   The Plaintiff reiterates Paragraph #'s 1 through 146 and incorporates such by reference herein.

148.   The actions and conduct were taken herein for the collateral purpose of punishing the Plaintiff for the exercise of her speech activities in  violation of the laws and Constitution of the State of New York.

149.   The Plaintiff suffered injuries and damages.

FIFTEENTH CAUSE OF ACTION

150.   The Plaintiff reiterates Paragraph #'s 1 through 149 and incorporates such by reference herein.

151.   The actions and conduct of the Defendant parties were negligent and the proximate cause of the injuries and damages that the Plaintiff suffered.

152.   The Plaintiff suffered injuries and damages.

SIXTEENTH CAUSE OF ACTION

153.   The Plaintiff reiterates Paragraph #'s 1 through 152 and incorporates such by reference herein.

154.   The Defendant City's policies and practices, which

propelled the actions and conduct herein, including the policies related to the oversight and administration of the February 15, 2003 demonstration and march and including the handcuffing policies and practices and including the conditions of detention oversight and administration policies and practices, violated the Plaintiff's rights as guaranteed under the First, Fourth and Fourteenth Amendments to the United States Constitution.

155.  The Plaintiff suffered injuries and damages.

SEVENTEENTH CAUSE OF ACTION

156.  The Plaintiff reiterates Paragraph # 's 1 through 155 and incorporates such by reference herein.

157.  Independent of the negligence claims against the Defendant City and independent of the Monell based claims against the Defendant City, the Defendant City is responsible, under State law and based on State law jurisdiction and pursuant to State law and under the doctrine of respondeat superior, for the wrongful and unlawful acts and conduct of its agents and employees.

158.  The Plaintiff suffered injuries and damages.

EIGHTEENTH CAUSE OF ACTION

159.  The Plaintiff reiterates Paragraph #'s 1 through 158 and incorporates such by reference herein.

160.  The actions and conduct of the Command Officers knowingly and/or recklessly and with deliberate indifference to the rights of the Plaintiff sanctioned and ratified the wrongful, unlawful, and unconstitutional conduct and actions of the subordinates

officers in violation of the Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and, as well, the laws and Constitution of the State of New York.

161. The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction herein and thereafter:

[a] Assume pendent party and pendent claim jurisdiction.

[b] Enter appropriate declaratory and injunctive relief.

[c] Award appropriate compensatory and punitive damages in an amount to be defined and determined.

[d] Award reasonable costs and attorney's fees.

[e] Award such other and further relief as the Court deems appropriate and just.

[f] Convene and empanel a jury.

DATED: New York, New York
        July 27, 2005

                              Respectfully submitted,

                              _____
                              JAMES I. MEYERSON [JM 4304]
                              396 Broadway-Suite # 601
                              New York, New York 10013
                              [212] 226-3310
                              ATTORNEY FOR PLAINTIFF
                              BY:_____